Good morning, Your Honors. Courtney Seeland for the appellant petitioner, Mr. Prentice Jones. May I reserve two minutes for rebuttals, Your Honors? Good luck. But yes, certainly. You may try. Okay. All right. Thank you very much, Your Honors. Your Honors, we're here today because there was insufficient evidence to support the guilty verdict for count one robbery in this case. Simply put, there was insufficient evidence. There was insufficient evidence should this case have to stand alone on the facts and on the law and on the standard of review. The insufficiency of the evidence is tough on direct appeal, but it's probably even a little harder under AEDPA. But I'd like you to address the obviously direct and circumstantial evidence are both considered admissible evidence. Yes. And if it were direct appeal, they get all inferences in favor of the verdict. And there is circumstantial evidence in this case, and while you may not view it as the strongest case, why isn't that sufficient in that there's the vehicle, it's parked in a way that it would be the getaway vehicle, and he's the owner of that vehicle, correct? The facts show that the car was still legally registered to him at that time. Registered to him. And that, and according to the prosecutions, he tried to hide evidence that he owned the car used in the gas station robbery after police had questioned Jones's mother about the car. And I know you did, there was rebuttal evidence presented, but that in terms of the circumstantial evidence, and so tell me how, if they get all the inferences, that still, that you can prevail under the AEDPA standard. Your Honor, I believe that the facts showed with respect to the police visiting the mother, the evidence showed that Mr. Jones went to his friend rather than directly to the police. Further, the evidence looks more like speculation and conjecture, a mere modicum of evidence as discussed in Jackson, and particularly in light of the facts in this Court's ruling in 1H. The facts in 1H, Your Honors, were actually more egregious and provided more inference for that jury in that California Court of Appeal than our facts do in our case. Your Honors, again, in 1H, if I may turn to 1H for a moment. In 1H, there was a history of violence and repeated sort of interactions between the gang members, between the specific parties, and between the defendant, 1H, and the victims in that case. Further, 1H was standing literally just beside and behind, as you know, his brother, who in fact was the gunman, the person that pulled the trigger.  There was police presence there. There was flight. There were a number of sets of circumstances. In that case — Can I ask one — Yes, please. — as a Judge Gould? Apologize for interrupting, but I know about 1H because I authored — Yes, sir. — authored it. I don't think, at least in my view, it's not a stronger case of guilt obvious than here, because in that case he was standing behind his brother. Yes. But their trailer home had been shot up. Yes. So it's kind of natural for the younger brother to stand behind his older brother in front of the trailer. And there was no evidence that he knew his brother had a gun. Yes, Your Honor, I understand. In our instance, we have an individual who may or may not have been my client, seated in the passenger seat of the car. There's a resident from the apartment complex, right? Yes, Your Honor. And does the resident identify her client at the trial? No, she did not, Your Honor. She identified — she described the individual in general racial age and body build terms that did, in fact, match — generally speaking, did match Mr. Jones, but she did not identify Mr. Jones as the individual sitting in the car. And also she said — the resident said something about how the car was unusually parked, right? And that's not how people usually park. And I think the resident also said that the person tried to conceal their identity when the resident's dog barked at him while the person sat in the front passenger side of the car, right? Well, again, Your Honor, what Ms. Miano said was that as she and her dog approached the car and the dog was barking at the individual sitting in the car, the individual slouched down. I don't believe that Ms. Miano said anything about an absolute sort of conclusion about trying to conceal identity. All right. But if that could be an inference from that, the prosecution would be entitled to that inference to support the verdict, right? And that's how they argued the case. Your Honor, the prosecution would be entitled to any inference that I believe it was able to access. I believe that the standard we're looking at right now is — was the evidence sufficient? In other words, was the evidence more than a modicum of evidence under Jackson? Is it sufficient under Jackson to allow for this verdict to stand under a reasonable objective standard? So the question under Jackson is whether a rational jury could conclude from the evidence that the appellant was guilty because he had done all required elements of the crime beyond a reasonable doubt. Yes, Your Honor. And it leads me back to Judge Callahan's question, which is concerning the general issues of sufficiency. Again, these are — there are three elements, not merely the knowledge element, but also the element that he manifested the specific intent that the principal should succeed in this case in the robbery, and that he did something to ensure that success. Again, this — all we know, the only facts that were available to the jury and to the reviewing court were simply that the car was registered, which — and registration is neither a — is not a possession nor is it exercise of dominion or control — that he may or may not, he may, he may have been the individual seated in the passenger seat who did absolutely nothing more than sit in the passenger seat with respect to the robbery. He slouched, not when an individual approached, but there was a barking dog. The dog kept barking. They were approaching him in the car. He slouches down at that particular instance, and he — and then the principal returns, and then they drive away in the car. In other words, the only facts that the jury had before it concerned registration, his slouching down at the approach of a barking dog, and then once the police — pardon me. Counsel, I have a question for you. Yes, Your Honor. The person he identified as having bought his car, did that person fit the description that the witness gave of the person who was slouching — who slouched down in the car? Your Honor, my understanding, if I may quickly, before my time — my primary time runs out — the evidence showed that he had sold the car to Ms. Robinson, and that Ms. Robinson testified that she had loaned the car to an individual who did, in fact, match the description of — the description that Ms. Miano gave. May I reserve the rest of my time for rebuttals, Your Honor?  Okay. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Deputy Attorney General Christopher Beasley, on behalf of the Respondent. In habeas review, it is a very heavy burden for the defendant to overcome the conviction. But it's not impossible. No. I mean, we know what the standard is, and we understand that AEDPA requires extreme deference. But I'm troubled by the permissible inferences that show the defendant's knowledge that the robbery was taking place and his intention to assist. I mean, basically, you have somebody sitting in the passenger seat of a parked car waiting for someone to come back. He comes back, and they leave. That's basically the evidence here. And it's — I have difficulty seeing how that isn't just waiting for your friend to go lawfully buy a Pepsi and return. I mean, I guess it's the — it's the intention piece and the knowledge of the robbery piece that I find difficult. I think that when we look at the evidence, though, Your Honor, there is sufficient evidence that gives rise to the inference that he does share the same intent under the aiding and abetting requirement. First, the car is not parked in the Minimart parking lot. If this were an innocent parking of a car to go shopping in the Minimart, you would expect the car to be parked in the Minimart parking lot, not in a residential parking lot for an apartment complex where nobody is home except for Ms. Miano, who testified that none of her tenant friends are home. So that fact raises the question, why is this car parked here and not there if this is indeed lawful conduct that's happening? But he didn't park it. He's in the passenger seat the whole time. That's correct. But I think also a reasonable inference that's established is he's witnessing all of what his compatriot is doing with parking the car backwards into the parking lot, which is an unusual way to park a car in that parking lot. And then he's sitting there watching his compatriot go into the Minimart. He can see all of this, which is a reasonable inference given the fact that the car is parked backwards, and he's facing the Minimart. Right. He sees him go in and come out, but that doesn't say what he knows about what happened inside. But those are, again, the reasonable inferences that can be drawn together with the fact that he does then end up slouching in his seat when he's spotted. The reason why they're parked in this parking lot away from the Minimart is because they're going to do this robbery. They don't want to be caught. They don't want to be seen by anyone in the Minimart that could write down their license plate number. They park in a quiet residential parking lot, thinking that that's where they're going to be safest. And lo and behold, a person comes by that they didn't necessarily anticipate, and he's now slouching down, realizing that he could be detected. Those are all reasonable inferences that this jury could draw. What's the significance? Didn't you put into evidence also that he had a suspended driver's license? I'm sorry. Didn't you put into evidence that he had a suspended driver's license? That's true. That is correct. You put in evidence that he was a registered owner, that his license was suspended, so that's why he wouldn't have been driving. That's correct. That's correct. As I was telling my wife about this. Which makes him sound more law-abiding if he's unwilling to drive with a suspended license. That is exactly what my wife said as I was telling her about this case. She said, why is he deciding to break the robbery law and not the driving on a suspended license? But there's a perfectly valid explanation. If this car gets stuck and he's driving on a suspended license, he can be arrested. And then on that, under that arrest, that car can be searched as a search incident to lawful arrest. And then we've got the ---- And you think it's reasonable for a jury to infer that he has that much knowledge of the intricacies of Fourth Amendment law? If the prosecutor is arguing that, I think that that is a reasonable inference that a jury could make. So when you add all of these things up, together with the fact that we're looking at a very deferential standard on direct appeal, let alone under the AAVPA standard ---- Your briefing did not, as I recall it, respond to the citation of 1H. And it is certainly different in the facts, and I think Judge Gould will continue to educate us on the details of it. But it was an AEDPA case in which our court held that there was insufficient evidence in a somewhat similar circumstance. How is this case stronger than 1H for the State? I think that it's stronger because you have these additional factors. With 1H, the brother was just standing behind his brother who was the culpable one, and there was nothing necessarily connecting him to his culpable brother. Whereas here, there are things that do connect this defendant to the culpable cohort, the fact that he's the passenger in the car, the fact that he's the one providing the car since he's the registered owner, the fact that he's able to watch everything unfold, the fact that he's slouching down in his seat, the fact that he watches his compadre come back, the fact that ---- All of this is absolute proof that he was there and that he accompanied the robber. But I guess I still have difficulties seeing how that means that he both knew that the robbery was going to take place or was taking place and that he intended to be of assistance as distinct from simply going shopping with somebody, which is not a crime. That is correct. But again, when you consider with 1H, the brother was just present, and that's all we had. Whereas here, we have presence together with additional factors. Was the brother in 1H present at his home? I think it was his home. All right. So here, he's present not at his home. That's correct. And an adjacent parking lot parked in an odd way. That's correct. All of those factors, then. Counsel, could you elaborate on the parking? I mean, my impression was that the car was parked kind of backed into the slot, so it was poised for getaway, or, you know, it could be viewed that way as a car angled so it could make a getaway. Correct. That is correct. That is how the car was parked. And it was parked in such a way so as the passenger, in this case the defendant, was able to look out the front of his car and see what was unfolding before him. He's not just sitting there. He's also serving as the lookout. And as he — that's a reasonable inference. We have — we can't — we can't get into his mind with direct evidence. That's rarely do we — do we establish intent. Was that argument — was the argument relating to how the car was parked part of what was presented to the jury? Yes. My recollection of the prosecutor's argument to the jury was that that was why the car was parked that way, so that he could serve as the lookout. And — excuse me. So he was able to see everything that was unfolding so that if he needed to, he could somehow warn his companion in the crime. He then gets detected, and then he slouches down in his seat. All of these factors together raise this reasonable inference that a jury can — and there are other reasonable inferences, but we leave it to the jury to determine which reasonable inferences to adopt to lead to its conclusion. In this case, the jury did reach a conclusion of guilt adopting the inferences that, yeah, he did harbor that. Well, now, did you argue there was also with when his mother was contacted about the car and all of that? Did you argue a consciousness of guilt or something like that? Yes, Judge Callahan. There was certainly a consciousness of guilt argument that was tendered. Not only is he telling his mom — not only does his mom tell him, the detectives are looking for you, and she then denies telling him that — or she denies that the detectives said, we are looking for the car. She tells him, the detectives are looking for you. He turns around and tells Danesha Robinson, you need to contact the police. They're looking for the car. It was involved in something. Now, how would he know any of that unless he had been involved in some way, shape, or form? There's that consciousness of guilt that he's trying to distance himself from the car as much as he possibly can. Not only do we have that, then we also have him trying to establish the sale of the car with Danesha Robinson, plus her testimony trying to establish that someone else had the car, J.R., a person she doesn't really know very well, a person that she doesn't even know where he lives that she's claiming she's lending the car to him. All of this leads to the reasonable inference this was all a sham to try to distance the defendant from the car because of his consciousness of guilt. Well, and at the trial, obviously the defense argued that it wasn't him and the car. The car had been sold and all of those things. And I'm assuming the prosecutor argued what you're just saying, and the jury said we're not buying the defendant's argument. That's exactly right. And so when we have these inferences and the jury is able to make those determinations, we, on direct appeal, we look, are there – is there evidence that supports what the jury did? And in this case, there was nothing objectively unreasonable in the way that the court of appeal, the California court of appeal, resolved that issue. The court of appeal analyzed the evidence under the Jackson standard and it reached its conclusion. Under AEDPA, that objective conclusion should be upheld. And if this Court has no further questions, we submit. Thank you. Thank you, Your Honors. Do you have rebuttal time remaining? Thank you, Your Honors. If I may address the majority of the facts that you were discussing with Respondent, it seems that the majority of the facts that were being discussed go to the knowledge element. The registration of the car, the manner in which the car was parked, that he was slouching down, that he went to Denise Robertson rather than going directly to the police when the police tried to contact him. Even if this were to, under the AEDPA standard, under Jackson or under AEDPA, satisfy the knowledge requirement, none of this goes to satisfy or is insufficient to satisfy the other two prongs of aiding and abetting, which are that he manifested the specific intent that his cohort should succeed in carrying out the gas mount robbery, and further, that he did anything that would support the success of the investigation. So the argument would be that he provided the car. And you can't really have, you know, I mean, if someone is an aider and abetter and you provide the car and that's the getaway mechanism, that would be the argument that you would make. You can't – it's sort of like you can't have a drive-by without a driver. And if you're going to have a getaway car, you can't do it without a car. Yes, Your Honor. But again, the facts establish that the car was registered to Mr. Jones, which then not that he was necessarily the individual in possession of the car or that he exercised dominion or control over the car that evening. Counsel. Yes, Your Honor. It wasn't definitively established that he was the person in the car. It was not. You can't be 100 percent certain of that. But was there sufficient evidence for a jury to decide that he was the person in the car? Your Honor, there was a general description that matches Mr. Jones. It is not – we are not conceding that there was sufficient evidence to – that that is sufficient evidence to have established that that was Mr. Jones. Again, all of the evidence with respect to both his identity and the three prongs of aiding and abetting must be taken and considered within the – looked at in the totality of the circumstances and the totality of the circumstances in terms of supporting the jury's inference, but also the totality of the circumstances in and among all of the other evidence that was provided. And if I'm – in my remaining seconds, there is one – You have no remaining seconds, but you may sum up. Oh, I beg your pardon, Your Honor. Only to – only to reiterate this, the fact that there was, in fact, a large – a large wall separating the apartment complex parking lot and the gas mart, and it's questionable whether the individual sitting in the passenger seat of the car would, in fact, have been able to have seen anything that was going on. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted, and we appreciate the helpful arguments from both counsel.
judges: Graber, Gould, Callahan